Good afternoon everyone. Our only case this afternoon is Southern Illinois Power Cooperative v. EPA, case numbers 1633-98 and 1714-42. Mr. Magenflaer? I know it feels weird to be coming up first for me too. Good afternoon and may it please the court. My name is Dustin Magenflaer and I represent the United States. With me at council table is Andrea Carrillo from EPA's Office of General Counsel. The Clean Air Act determines forum based upon the nature of EPA's actions. The statute has three categories. First, those EPA actions or regulations which are nationally applicable. Second, those which are locally or regionally applicable. Third, those which are locally or regionally applicable but found by the administrator to be based upon a determination of nationwide scope or effect. The act thus makes the D.C. Circuit the exclusive forum for judicial review of the first and third types of EPA actions or regulations. Here, the petitioner seeks judicial review of an EPA final action promulgating 61 air quality designations in 24 states from Hawaii to New York. The D.C. Circuit is the exclusive forum for review of EPA's final rule because it is either the first or third type of action contemplated by the act. For the reasoning in the Tenth Circuit's thorough analysis and ATK launch systems or for type three because the then EPA administrator found that the final rule is based on a determination of nationwide scope or effect and published that finding in the Federal Register. Accordingly, the court should grant EPA's motion to dismiss or transfer these petitions to the D.C. Circuit. We ordered this motions matter orally argued to try to get the rule right for how to read this statutory scheme on judicial review. As you know, the centerpiece of the appeal is the Madison Gas case and whether that case is a correct interpretation of the statutory scheme or if not, whether it should be overruled. So perhaps we can move right to that. Absolutely, Your Honor. Well, of course, the question of whether it should be overruled depends in this circumstance on whether the court concludes that it's distinguishable from the matter at hand. If it is distinguishable, then the court need not reach the question. Our position is that Madison Gas is distinguishable and perhaps the two primary reasons that we've identified for that is first that in the rule at issue in Madison Gas, there was no finding made by EPA that that rule was based on a determination of nationwide scope or effect which distinguishes it from the final rule at hand. Right, that's the exception to the local or regional applicability path to the regional circuit. Correct. But before we even get to that path, we would have to be deciding whether this is a nationally applicable rule that's being I think engages with the Madison Gas case no matter what that third path to regional circuit review might or might not be available. So I think we do need to just address the issue head on about whether Madison Gas is the correct statutory interpretation that focuses on what the petition says as opposed to what the regulation says. Absolutely, Your Honor. And I was making that point just because we don't believe the court needs to reach the nationwide scope or effect determination rather that that is just one way of distinguishing what happened in Madison Gas from what's happening here. But to go to the question of whether Madison Gas was correctly decided, our position of course is that it is not as we explained in our briefs. And at the heart of that matter, as Your Honor just said, is the question is it the nature of the petition or is it the nature of the challenge that is being brought to EPA's action that determines forum under Section 7607 or is it the nature of EPA's final action or the regulations promulgated by the agency. And there is nothing in the statute that supports the argument that it is the nature of the challenge. Unlike many statutes, the Clean Air Act does not give petitioners any choice of where to file. So it is not kind of a traditional venue provision in that sense of affording petitioners or plaintiffs a choice. The Clean Air Act specifies for reasons we discussed in our demonstration in the legislative history, Congress was trying to set forth a clear scheme to provide direction to petitioners on where they may file. And that is why we would argue the statute speaks of that petitions may be filed only in certain courts depending on whether an EPA action or final regulations falls within the first, second, or third bucket that's identified by the statute. So here, so in Madison Gas, the court on the one hand said if you have a, you know, national feature of a regulation being challenged that that would have to go to the D.C. Circuit. But even that doesn't comport with the statute, which doesn't focus on what part of the agency action you're challenging or what your reasons for bringing a petition for review of agency action is. Rather, it just simply says if the agency action is nationally applicable, forum is the D.C. Circuit. But then the court continues and says if this was a validly, in Madison Gas I mean, if this was a validly local, such as a petition for review of EPA action on a state implementation plan, then it would clearly be in the appropriate regional circuit. And that, of course, we don't dispute. The statute makes very clear that actions by EPA acting on a state implementation plan submission go to the appropriate regional circuit, unless, of course, EPA makes the nationwide scope or effect finding and we're into the third category. The court in Madison Gas said that the case at issue, the rule presented there, and the challenge presented there was an intermediate case. And we respectfully submit that the statute doesn't support the idea that there's an intermediate case. The EPA action is either the first type, the second type, or the third type. It's all or nothing. I'm sorry? All or nothing. Correct. It has to fit into one of the three buckets. In air quality designations, which of course is the rule at issue here, it's the rule at issue in ATK, and it's the rule, it's the type of rule that was at issue in a number of other decisions we cited in our brief, excuse me, and the kind that this court has previously confronted when granting EPA motions to dismiss or transfer. What the Tenth Circuit has said for air quality designations is, well, let me back up. I apologize. Before even talking about the particular type of rule at issue, what the Tenth Circuit said was, it is the nature of EPA's action. And the Tenth Circuit's reasoning was that the plain language of section 7607 requires that this decision be made based on the nature of EPA's action. As the Tenth Circuit articulated, Congress could have done a different kind of statute. It could have said all national challenges brought to an EPA rule, for example, but it didn't do that. I mean, even in other environmental statutes, there are different provisions for determining forum, such as under the Clean Water Act, which says where petitioners, plaintiffs reside or transact business. So the Clean Air Act does establish a very specific scheme for determining forum for challenges to EPA actions. So the Tenth Circuit, now turning to air quality designations, looked at what was at issue in that rule, looked at the face of the rule, and said EPA is applying an analytic rubric across the country for making these designations. And that's the same thing that EPA has done here. And so our argument is that you look to the face of the rule, consistent with the Tenth Circuit's reasoning in ATK, consistent with what the DC Circuit has said in cases like NRDC v. Thomas, and consistent with what this court has said in New York v. EPA. So that's another element of the equation here as well, is that five years after Madison Gas was issued, the court issued its decision in New York v. EPA and said, let me get the precise language if I can find it, that, quote, forum should depend on the location of the persons or enterprises that the action regulates. And that's looking again to the face of the rule. In the case we have here, the final rule regulates air quality areas in 24 different states. It's certainly not a local rule and it doesn't pertain to simply one state, for example. But again, that's looking to what does the rule on its face do? What does it regulate? What is its applicability? Not the question of. In New York v. EPA, the court gave no consideration to the type of challenge that was being brought to the rule at issue there. It didn't give any consideration to what issues the petitioners were bringing there. And that makes sense, because short of the filing of an opening merits brief, the court and the parties really can't know for certain what issues are going to be raised. I mean, there's nothing binding on the parties if they say, we're only challenging this little piece, so we only want to raise this one arguably local issue. They're not bound by that. We don't know what the scope of the issues or the scope of the challenge involved is until the opening merits brief is filed. By contrast, when EPA publishes its final rule in the Federal Register or takes other final action, it's fixed. It's done. The nature, the applicability of EPA's action is not going to change thereafter. So the parties, potential petitioners, the courts can all look readily and say, okay, this is where, this is how it falls into one of the three buckets. This is where forum is established by the statute, not by any choices made by any potential petitioners. So for those reasons, we submit respectively that Madison Gass, by focusing just on the nature of the challenge, what was the arguments being raised or what had been stated in the petition for review, that was simply too narrow of an inquiry, and it didn't pay heed to the statute's plain language requiring forum to be determined based on the nature of EPA's action. Unless the court has questions, I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Mr. Showalter. Good afternoon. My name is Mike Showalter. I'm here with my colleagues David Loring, Ryan Granholm on behalf of Southern Illinois Power Cooperative to respond to EPA's motion. Generally, what we're here to do is talk about a designation. We're not here to talk about 61 separate designations across the country. We are Illinois lawyers who represent Southern Illinois Power Cooperative, who does business in Williamson County, Illinois. And it is dealing with fact finding, specific fact findings, which were made related to its facility, which EPA has acknowledged throughout the regulatory process are local, which were made on an ad hoc basis, which it has the ability to challenge and, in fact, is required to challenge under the Seventh Circuit's Madison Gass decision here in this court. Only if that case was a correct statutory interpretation. If the case was a correct statutory interpretation. We believe that it was. Madison Gass looked at local, specific fact findings, which dealt with budgeting. 1993... Right, but the question is whether the focus of the inquiry for venue purposes is on the scope of the petition for review and the issues that the petitioner seeks review of, or the essential parameters of the challenge, or the scope of the regulation that's being challenged. The statute puts the focus on the regulation, not on the nature or scope of the petition for review. The EPA here has said it's nationally applicable. The statutory basis, the publication of the Federal Register, doesn't really have more than a sentence about it. It says, look, there's 61 things. They're all across the country. We'd say that that finding itself is not entitled to any sort of deference. And what the court should do here is look at the... That's the third path to regional circuit review. I'm talking about how to interpret this statute, whether the focus of the inquiry is on the regulation, and whether the regulation is nationally applicable, or the petition for review, and what the petitioner seeks review of. We would submit that the appropriate focus here is on the designation, and we would point the into what should happen here. Take it outside of the context of this case. Sure. I'm asking you just to do a straight up statutory interpretation. We believe... No facts, just what... We believe this is either... Falls into either the second prong. Take it outside of this case. Tell me how to interpret this statute in general terms. In general terms, you could look at the first provision as encompassing many things like legal challenges. EPA uses a term SIP call in its response brief, and the NRDC case versus Thomas case talks about something that's a SIP call. What happened there was EPA said, if you look at these SIPs all across the country, they're missing this specific legally required element. Right now there's a SIP call going on in D.C. about startup shutdown and malfunction elements. So the SIPs of many states are arguably deficient, and those would fit into that first category. The second category would encompass truly local or regional elements. One could see, envision certain kinds of funding disputes falling into there. Clearly SIP approvals fall into that just under terms of the statute, and we would submit that the designation in our case does too. So NAAQS determinations setting air quality regions would fall into that second prong. So the third case is a Madison gas case. It's a little bit more indeterminate in the sense of it's a local or regional action that could have national effects. Well, the Madison gas case didn't deal with that third path to regional circuit review. It's largely based on the second path. No, it declared a sort of hybrid. Sure. And what's the statutory authority for doing that? Well, I think that what they were trying to do is make sense of the second provision, because they clearly had determinations which were made by Wisconsin and Illinois regulators, which focused only on Illinois and Wisconsin with the terms of the statute. And none of the jurisdictional statutes under environmental laws are models of clarity. You know, the Clean Water Act provisions, which council has just held up, are undergoing Supreme Court review related to the waters of the United States rulemakings right now. And courts do sort of the best they can. If you didn't have an indeterminate decision or an intermediate decision like Madison gas, which is trying to deal with the fact that you have truly local rulemakings with arguments that the government has made that, oh, look, there's budgeting here. So it's not a zero sum game. How is this a truly local rulemaking when the regulation pertains to more than 20 states and it's 60 some odd different regions? Sure. How can that be deemed local? If you look at the path to getting there, you essentially have 61 or so separate rulemakings, which are bundled together for the purposes of this final rule, which is published in the register. And there's no findings that really demonstrate the factual rationale for why this should be put together. If you look at the rationales that EPA used to make these decisions, they're ad hoc. And what happened is EPA agreed to sort of change the default in a case called Sierra Club versus a new rulemaking. And for a lot of those places, they didn't have sufficient data. So they said, state regulators, do the best that you can. Take a look at local meteorology data. Take a look at local stack heights and come to us with a determination as to whether each of these individual air quality regions, if there's exceedances in relevant areas over a threshold, which we'd set. So setting, stepping back to the rulemaking, petitioners would argue that the 75 parts per billion number that is the NAAQS threshold, that is a legal rulemaking which would need to be filed in this circuit. That applies equally all across the country. But then if you look at the case at Barr, the issue that we're facing here, and the government continues to litigate very similar issues in Texas, the rulemaking which relates to us, that we participated in, that relates to our county and our county alum. So it's not a national thing. The government has argued in its briefs, the DC circuits evaluated cases like this before. The Treasure State case, which dealt with the 2010 SO2 NAAQS setting, the first line of it is, these two cases have virtually nothing in common. And that doesn't make sense. So what we're saying here, what petitioners are saying, is the court should peer back behind the fact that EPA published a 61 element table in a final rule and look at the decisions which were actually reached. And the decisions that petitioner participated in, were decisions which were made using modeling that was done by the Illinois EPA. As were all of the other 61 decisions, the individual state or locality regulators were doing the modeling to the extent modeling was done, not the federal government. There's no uniform modeling standard. There's guidance, but the guidance pretty clearly says, you're conducting area specific analysis. The guidance says, you consider the data that you have. So there's not one sort of overarching principle. This tension, the tension the courts talked about, is a tension that courts have struggled with for a long time. If you look back to the Texas Municipal Power case, it's a DC circuit case from the 90s. The court said, the distinctions here are a little bit ephemeral, but what you're going to do is look at the dispute, is it predominantly legal or is it predominantly factual? For a factual dispute, more often than not, you're going to end up in a local or regional circuit. For a legal dispute, you're going to end up in a DC circuit. And petitioner submits that that is really the appropriate breakdown. And the way you harmonize that with the statute is, you assume a default where there's a factual situation of a factual rule making is going to be a category two. And then category three exists for factual situations where you have something like the better than BART rule, which the Third Circuit eventually stripped away and said, hey, you can challenge the factual determinations in this rulemaking here, but you can't challenge this legal one. So the factual determinations were dealt with by the Third Circuit. And a legal case continues to exist relating a broader thing in the DC circuit, which I think is stayed right now due to the change in administration. I did not see in that DC circuit case in Texas municipal power a fine line drawn between legal and factual disputes as being dispositive of the venue question. I thought the court said that that distinction is elusive, so we're not going to use it. It does. So I'm pointing to page 866 of that decision, specifically footnote 5, which notes that legal challenges may be more likely reviewable in the DC circuit while factual challenges more likely locally applicable in review in regional circuits. Court's correct, but that the decision is largely ephemeral. So you are correct. That's the language I'm pointing to, page 866, largely footnote 5. Right, which the court later said in the body of the opinion is sort of an elusive distinction. Sure. So not a good rule. And we continue to stand here and struggle. So the first point of the argument is, this case is much more local and looks much more like a SIPP determination than would even some of the other rulemakings here, where there's nothing legal. The standard which binds this all together is factual in the fact that EPA had some guidance, which even the guidance says is not necessarily binding. It's as if you took, if you were trying to make a cake and you started off taking 61 chocolate chips and mashing them together, you can mash them together, but you're never going to end up with your national cake when all you start off with is your 61 local rulemakings. And we would say that's what happened here. If you look to the Federal Register notice, the assertion that the government's made that this is nationally applicable is basically a bald assertion. It said, look, it's happening in lots of places in the country. And petitioners would submit that's not enough. That's not something that an administrative agency is entitled to do. And if that fact exists to determine court jurisdiction, we would say that's pretty substantially at odds with both historic separation of powers, going back to Locke and Blackstone, and beyond that to most of the other decisions of which we're aware in that area, including the Exelon case, Ramsey versus Boucher, and a bunch of others that we've cited in our briefs. So we would say basically where you are is this case is a Madison Gas case. Madison Gas would be closer to being a national case because there's sort of a budgeting aspect to it, where our air quality region stands alone. And Madison Gas shouldn't be overturned. You know, EPA, the best case for us, they point to the ATK decision and say, hey, these cases, these next cases are a little bit magical, and they're special, and you've got one in the Tenth Circuit case, so you should distinguish your own case and overturn it. We'd say that doesn't make a whole lot of sense, and that looking to the overall weight of cases from all across the country, Madison Gas is a good sound rule which courts have acknowledged for a long time and should hold to now. The effect of a reversal in this case would have no impact beyond Williamson County? We believe the effect of the reserve, I mean, it's an ad hoc rationale. So you can look for cases where courts have evaluated substantively, there's, you know, different distinctions. The one that jumps to mind is Catawba County, which was a D.C. Circuit case dealing with NACs. They talk about where one set of New York facilities was inconsistent with another ones, but we really suspect what would happen is, on the merits, we're going to say, hey, if we did argue, you treated us differently than these facilities over there, EPA is going to argue as they did in a case like Catawba County, well, we didn't really, we gave way to these other factors, so your case isn't like that. We'd say, given the ad hoc nature of the standard we're applying here, that situation is almost never going to happen. Even though, you know, you could posit that it's going to happen, you know, it's going to end up being much more like any sort of EPA arbitrary and capricious determination that you're going to have anywhere on the merits. So the result of a reversal here would be less disruptive on the national status quo than the Madison gas case merits determination was? We believe so, because each air quality region kind of stands for itself. It doesn't have effects outside of the region. The nature of SO2 is the effects that you're going to have for that pollutant, for that chemical, are going to be local and local effects, and they're not going to have kind of nationwide overarching effects. So it's a much easier case that looks to petitioners much more like a standard SIP analysis, which is listed in the statute as a category two situation than it would in the other categories. So for that reasoning, we would, you know, we basically, you know, stand with that. All right. Thank you. Thank you. I'd like to return to the overarching question about statutory interpretation and then respond to a few other particular points that counsel for petitioner made. So first, the petitioner did not offer any interpretation of section 7607 in their brief that would justify their position here. They did not offer any statutory interpretation that would support their argument that EPA's final rule here is merely an amalgamation of 61 discrete agency actions. They did not offer any case law that supported their argument that this is an amalgamation of 61 local actions. Right. It was basically a stare decisis argument, follow Madison Gas, end of story. But at the podium here, we heard this legal factual distinction as a proposed method of approaching the statutory allocation of jurisdiction, excuse me, venue. So what's wrong with that rule? Well, I completely agree with Your Honor. That was a footnote in a decision where the D.C. Circuit was actually looking at Madison Gas because the Texas Municipal Power decision in the D.C. Circuit was actually the consolidated petitions for review of the same rulemaking that this court ruled on the merits in Madison Gas in the subsequent merits decision. And so, sua sponte, the D.C. Circuit brought up an argument, should this case actually be before us? Look at what the Seventh Circuit held in Madison Gas and the parties kind of addressed it at argument and then the court sort of discussed it in its opinion, had that footnote that says this seems a little weird and then ultimately said, well, it's venue and EPA didn't object, which, of course, EPA didn't object. EPA's position was that the case should be in the D.C. Circuit and the court said, great, let's move right along. So in contrast to that footnote, if the court looks to the D.C. Circuit's decision in the American Road and Transportation Builders Association case, which we cited, the court said, quote, in determining that a SIP approval is a locally or regionally applicable action, this court need look only to the face of the rulemaking rather than to its practical effects. That's consistent with what the D.C. Circuit also said in NRDC v. Thomas, which it said, as ATK Launch Systems quoted it for, to look at the face of the rule to determine its applicability. It's also consistent with what the Tenth Circuit said in ATK. So what we submit is the correct interpretation of the statute, the one required by its plain language, is to look to the nature of EPA's action, not to look at what the challenge is or some elusive footnote-based theory of fact versus legal as being relevant. There's nothing in the statute that says legal challenges must be brought in the D.C. Circuit, fact-based challenges must be brought in the local circuits. Certainly legal issues, legal challenges are made to EPA actions on SIPs in the regional circuit courts in numerous decisions challenging EPA actions on SIPs. So it's not true that all SIP challenges are solely limited to facts and that that's some kind of distinction that would govern. With respect to, again, kind of how this was all put together, EPA begins with its national analytical framework because that is what gives meaning to the statutory definition of non-attainment, and attainment, and unclassifiable. The statute doesn't tell you how do you make that determination, what information do you base that determination on. It just basically says non-attainment is an area that's not meeting the applicable air quality standard. And so EPA has developed this analytic rubric for making those determinations. It then takes that nationally applicable analytic rubric and applies it to areas across the country for making designations. Right. The co-op says it's entirely ad hoc, the rubric, and the effect of a reversal in this case won't have ripples elsewhere. We disagree on both counts and for multiple reasons. The analytic rubric was applied consistently across the country. And to the extent someone wants to challenge or raise the issue, as Petitioner actually just conceded, Petitioner's counsel just conceded they do, of whether it was in fact applied consistently or whether EPA treated different areas differently, that's the kind of issue that goes to EPA's national approach that Congress wanted centralized in the DC Circuit. Because if EPA did not compare areas or treat areas equally, that does go to the question of, well, is EPA's national approach reasonable? Did EPA correctly interpret the statute or make reasonable decisions? The issues raised by the cooperative here, which also include those raised in their administrative petition for reconsideration, to which the cooperative has never responded to us pointing to those issues, which do absolutely go to very big national questions of, can EPA even rely on the use of modeling data at all? But those issues go to the question of, did EPA have the authority to rely on the information that it did? And it made that decision, it applied it to Williamson County. So a reversal on the merits of that issue, at a minimum, would have effect throughout the Seventh Circuit, because that would be a binding decision of the Seventh Circuit. And there's real practical harm and consequences to having different rules apply to different parts of the country for how you determine their non-attainment. Non-attainment has significant legal consequences for how states have to bring those areas into compliance with the ambient air quality standard. And if it's easier or harder to be designated as non-attainment in one area than it is in different parts of the country, that's problematic. And that's another example of why these kinds of national issues, how EPA approached these issues consistently across the country, were determined by Congress to be subject to review in the D.C. Circuit. Unless the Court has any further questions, we would ask that EPA's motion to dismiss or transfer be granted. All right, thank you. And our thanks to both counsel, all counsel, the cases taken under advisement. Thank you.